IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JERMAINE GIBBS, ) | |
| ) | **Case No.** |
| PLAINTIFF, ) | |
| ) | **COMPLAINT FOR VIOLATIONS OF** |
| ) | **THE CIVIL RIGHTS ACT OF 1871, 42** |
| ) | **U.S.C. § 1983** |
| v. ) | |
| ) | |
| TENNESSEE DEPARTMENT OF ) | |
| CORRECTIONS, WARDEN TONY MAYS, ) | **JURY TRIAL DEMANDED** |
| in his official and individual capacities; ) | **PURSUANT TO FED. R. CIV. PRO. 38(a)** |
| LIEUTENANT CHARLES STEVENS, in his ) | **& (b)** |
| individual capacity; CAPTAIN DARRELL ) | |
| JONES, in his individual capacity; OFFICER ) | |
| MADISON CAMPBELL, in her individual ) | |
| capacity; OFFICER DAKOTA TAYLOR, in ) | |
| his individual capacity; and OFFICER ) | |
| STEVEN WHITE, in his individual capacity, ) | |
| ) | |
| DEFENDANTS. ) | |

# COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Jermaine Gibbs ("Plaintiff"), by and through his designated attorneys, for his Complaint alleges as follows:

## I.

## **NATURE OF THE ACTION**

1. Plaintiff was subjected to multiple civil rights violations at the hands of a group of Tennessee Department of Corrections ("TDOC") correctional officers while he was incarcerated at Riverbend Maximum Security Prison (the "Prison"). Plaintiff was beaten, kicked, tazed and

stabbed by no less than five (5) correctional officers, who included a captain and a lieutenant. As a result of this unwarranted and unlawful use of force, Plaintiff suffered multiple facial fractures including a nonoperative left orbital roof fracture and a front sinus wall fracture, a massive left frontal scalp hematoma, hemorrhage of both eyes, loss of vision, and was stabbed in his left thigh.

2. Warden Tony Mays then ratified the officers actions by refusing to have the matter properly investigated despite a substantial amount of evidence to indicate that his subordinates orchestrated and assaulted Plaintiff and being directed to do so by Kevin Genovese, the Deputy Assistant Commissioner of Prison Operations at TDOC. As a result, the individual deputies in question were, on information and belief, not disciplined or terminated and could not be prosecuted for their criminal acts.

3. This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 in order to remedy Defendants' actions in causing Plaintiff to be deprived of his constitutional rights secured by the Eighth Amendment of the United States Constitution.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

**III.**

**THE PARTIES AND PERSONAL JURISDICTION**

6. Plaintiff is currently a resident of Davidson County, Tennessee.

7. The Tennessee Department of Corrections is an arm of the State of Tennessee and is subject to suit solely for the purposes of injunctive relief. Plaintiff does not seek damages against the Tennessee Department of Corrections.

8. Defendant Tony Mays ("Defendant Mays" or "Warden Mays"), upon information and belief, is a citizen and resident of Davidson County, Tennessee. At all times material to this cause, Defendant Mays was employed by TDOC as the Warden of the Prison, and acted pursuant to the rules and regulations of TDOC. Warden Mays has policymaking authority and was ultimately responsible for the oversight and implementation of all policies at Riverbend during all relevant times related to this matter. At all times material to this cause, Warden Mays was acting under color of law. Warden Mays is being sued in both his official and individual capacities.

9. Defendant Darrell Jones ("Defendant Jones" or "Cpt. Jones") upon information and belief, is a citizen of Tennessee and at all times material to this cause, Captain Jones was employed by Riverbend performing his duties as a correctional officer and was acting under color of state law. He is being sued in his individual capacity.

10. Defendant Charles Stevens ("Defendant Stevens" or "Lt. Stevens") upon information and belief, is a citizen of Tennessee and at all times material to this cause, Lt. Stevens was employed by Riverbend performing his duties as a correctional officer and was acting under color of state law. He is being sued in his individual capacity.

11. Defendant Madison Campbell ("Defendant Campbell") upon information and

3

belief, is a citizen of Tennessee and at all times material to this cause, Defendant Campbell was employed by Riverbend performing her duties as a correctional officer, and as the Corrections Emergency Response Team ("CERT") commander, and was acting under color of state law. She is being sued in his individual capacity.

12. Defendant Dakota Taylor ("Defendant Taylor") upon information and belief, is a citizen of Tennessee and at all times material to this cause, Defendant Taylor was employed by Riverbend performing his duties as a correctional officer, and as a CERT member, and was acting under color of state law. He is being sued in his individual capacity.

13. Defendant Steven White ("Defendant White") upon information and belief, is a citizen of Tennessee and at all times material to this cause, Defendant White was employed by Riverbend performing his duties as a correctional officer, and as a CERT member, and was acting under color. He is being sued in his individual capacity.

## IV.

## FACTUAL ALLEGATIONS

14. On April 11, 2023, at or around 11:39 a.m., Plaintiff was involved in an altercation with another inmate, Tevin Lumpkin ("Inmate Lumpkin"), in Unit 4 Delta Pod day room.

15. During the incident, Correctional Officer Michael Maerki ("Officer Maerki") tackled Plaintiff to the ground.

16. Inmate Lumpkin attempted to strike Plaintiff while he was on the ground with a broom stick but in doing so struck Officer Maerki and broke his hand.

17. Upon information and belief, a radio call was placed over the net for assistance which inaccurately reported that Officer Maerki had been stabbed.

18. Members of the CERT team made the scene, gave verbal directives for the fight to stop, and proceeded to deploy chemical agents to gain compliance.

19. Following the deployment of chemical agents, Inmate Lumpkin and Plaintiff complied with directives without further incident.

20. Following the incident and before being evaluated by medical, Inmate Lumpkin and Plaintiff were placed in handcuffs behind their backs.

21. At that time, they were both examined by medical staff. At that time, Plaintiff was found to have only sustained minor scratches and bruising. An excerpt from the Incident Report indicating as much is as follows:

```
INMATE LUMPKIN AND INMATE GIBBS COMPLIED WITH DIRECTIVES WITHOUT
FURTHER INCIDENT. INMATE LUMPKIN SUSTAINED TWO (2) MINOR LACERATIONS
TO THE RIGHT ARM AND INMATE GIBBS SUSTAINED MINOR SCRATCHES AND
BRUISING. BOTH INMATES WERE ASSESSED AND TREATED BY RESPONDING MEDICAL
STAFF. MEDICAL FORMS CR-2592 (ACCIDENT / INCIDENT / TRAUMATIC INJURY
REPORT) WERE COMPLETED BY REGISTERED NURSE SUSAN WALTON (INMATE
LUMPKIN) AND LICENSED PRACTICAL NURSE VALERIE LEONARD (INMATE GIBBS).
```

A complete copy of this incident report is hereto attached as **Exhibit A**.

22. Following being cleared by medical, Plaintiff was escorted from Unit 4 through the backdoor to Unit 1-B 105 cell by CERT members. On the way to Unit 1, while handcuffed behind his back, Plaintiff was picked up and dropped on his head six (6) times and dragged by his feet. Plaintiff avers that Defendant Taylor was the one picking him up and dropping him repeatedly on his head.

23. When Plaintiff arrived at Unit 1, Plaintiff was further beaten, kicked, tazed, and stabbed by Captain D. Jones, Lt. Stevens, Defendants Campbell, Taylor and White to the point that he had to be immediately transported to Vanderbilt Hospital.

24. Specifically, Lt. Stevens assaulted Plaintiff by choking him until he nearly lost consciousness, punching him in his right eye, and stomping him.

5

25. During the interaction he was tazed and, on information and belief, the only correctional officer involved in this incident who utilizes a taser is Captain Jones.

26. Plaintiff was diagnosed by Vanderbilt as having suffered multiple facial fractures including a nonoperative left orbital roof fracture and a front sinus wall fracture, a massive left frontal scalp hematoma, hemorrhage of both eyes, loss of vision, and was stabbed in his left thigh. Follow up treatment was advised.

27. Following the incident, Lt. Stevens made physical copies of the videos related to the incident on DVD but only requested the Unit 4 Delta Pod video, intentionally excluding the video of the assault on Plaintiff by the correctional officers. This incomplete and misleading video was provided it to Assistant Warden Ernest Lewis ("Warden Lewis"). Warden Lewis in turn provided those videos to Warden Mays.

28. Following his return to the Prison, Plaintiff was placed in observation in the medical infirmary and denied access to the grievance procedures. Plaintiff immediately sought grievance forms for the assault he suffered from each and every correctional officer that he encountered but was refused them.

29. On April 14, 2023, Warden Mays transmitted a Staff Assault Incident Review to the Assistant Commissioner of Prisons. This letter supports Plaintiff's assertions. It emphasizes that Plaintiff was assessed by medical and treated for minor scratches and bruising and also that once CERT team members arrived Plaintiff complied and was placed in restraints. A copy of this letter is hereto attached as **Exhibit B.**

30. Plaintiff avers that Warden Mays, as the Warden of the Prison, had knowledge of his transport to Vanderbilt and that the Staff Assault Incident Review lacked pertinent information regarding Plaintiff's injuries.

31. Plaintiff further avers that Warden Mays took deliberate actions to ensure that no investigation into Plaintiff's injuries occurred and took affirmative actions to thwart Plaintiff's grievance into the assault.

32. It was not until Friday, April 21, 2023, that Plaintiff convinced a member of the medical staff, Ms. Jennifer Miller ("Ms. Miller") to provide him a grievance form. Plaintiff completed it the same day and provided it back to Ms. Miller. Ms. Miller provided the grievance to a correctional officer last name Kelly who she watched place the grievance in the grievance box in the clinic.

33. By all accounts, Ms. Miller was the only advocate for Plaintiff following his assault. On April 24, 2023, Plaintiff's attorney, Craig A. Edgington ("Mr. Edgington"), was escorted to Plaintiff in the infirmary by Ms. Miller.

34. After having coordinated and secured visitation on April 21, 2023, through the proper channels, Mr. Edgington drove three (3) hours to the Prison. During Ms. Miller and Mr. Edgington's first attempt to walk to the infirmary, Ms. Miller received a radio call from administrators to escort Mr. Edgington off the premises, denying Plaintiff access to counsel. After being turned around and reaching the front office, Mr. Edgington advised staff that he would seek injunctive relief if he was not allowed to see his client. In turn, this information was relayed, and Mr. Edgington was allowed to visit his client.

35. Correctional officers attempted to stay in the room with Mr. Edgington and Plaintiff in violation of basic principles of attorney client privilege and Plaintiff's right to access to counsel and in a blatant attempt to intimidate Plaintiff. Mr. Edgington was forced to assert his client's right to privilege and access to counsel and again advise that he would seek court intervention absent their compliance with Plaintiff's rights. Only then did correctional officers

7

reluctantly leave the room, but they refused Plaintiff and Mr. Edgington privacy by remaining within hearing distance.

36. Inexplicably corrections officers repeatedly interrupted Mr. Edgington and Plaintiff and subsequently terminated the meeting prior to the completion of the attorney/client visit. No reasons were provided for the termination of the meeting, nor was there any previous indication of a time limit on attorney/client visits.

37. Ultimately, Ms. Miller was terminated from the Prison within a few weeks of Mr. Edgington's visit. Plaintiff avers this termination was retaliation due to the assistance that she provided to Plaintiff.

38. Plaintiff's April 21, 2023, grievance was marked as grievance number 23-0143/00359312. A copy of it is hereto attached as **Exhibit C**. On page 2 of his grievance, Plaintiff outlined each of the officer's actions in his assault.

39. On April 25, 2023, Mr. Edgington delivered a discovery preservation letter and public records request to Warden Mays via certified mail, return receipt and requested all records related to the April 11, 2023, assault, including but not limited to the surveillance footage which covered Plaintiff's transfer from 4-D-Pod to Unit 1 5 Cell B-pod, and any and all other camera footage that captured Plaintiff from thirty minutes prior to the incident until he was transported to Vanderbilt Hospital. To date, Plaintiff's counsel has been denied access to video footage as well as any administrative investigations into the correctional officers in this matter. Under the Tennessee Public Records Act, administrative investigations are not subject to exemption, and video may only be redacted in a manner sufficient to ensure that sensitive security information is not released. Single camera angles during a limited timeframe are *rarely* exempt from such public records requests.

8

Case 3:23-cv-01047    Document 1    Filed 10/06/23    Page 8 of 16 PageID #: 8

40. On May 2, 2023, Plaintiff's grievance was marked as non-grievable by the first line supervisor because it was not filed within seven (7) days of the assault inaccurately asserting that it contained multiple issues. Plaintiff appealed.

41. The grievance did not contain multiple issues, only allegations of the assault that is the subject of this lawsuit. The Prison staff improperly thwarted Plaintiff's ability to utilize the grievance process by refusing to provide him with grievance forms or access to the grievance box while he was in the infirmary.

42. On May 4, 2023, the grievance was marked as being non-grievable when the Grievance Chairperson acknowledged the first line supervisor's response. Plaintiff appealed.

43. On May 16, 2023, the grievance was marked as being non-grievable by Warden Mays when he concurred with the supervisor's response. Plaintiff appealed.

44. On May 25, 2023, Kevin Genovese ("Mr. Genovese"), the Deputy Assistant Commissioner of Prison Operations at TDOC, did not concur with Warden Mays determinations regarding Plaintiff's grievance. Mr. Genovese instructed the supervisor to respond to the allegations of staff assault by Plaintiff. A copy of the correspondence reflecting this order is hereto attached as **Exhibit D**.

45. On June 29, 2023, a supervisor whose name is not indicated responded that they saw no violations. A copy of this response is hereto attached as **Exhibit E**.

46. This supervisor did not review the appropriate video footage. They ended their report by stating, "CERT applied restraints and searched offender Gibbs and escorted him out of the unit." This is a clear indicator that the video reviewed was the footage from Unit 4 and ended without the supervisor reviewing any of the footage of his transport to Unit 1.

9

47. The Prison, through its policymakers, has a clear and persistent pattern of failing to discipline officers for constitutional violations or has policies that are insufficient to protect the constitutional rights of individuals as those policies are applied and understood within the Prison. This is evident from the fact that five officers violated Plaintiff's clearly established rights and no officers were punished despite video evidence of an assault on Plaintiff.

48. The Prison, through its policymakers, ratified the Individual Defendants' actions by refusing to investigate the incident that is the subject of this lawsuit and deliberately concealing the incident in violation of the directives of Mr. Genovese.

49. As a direct and proximate result of the Defendants' unlawful actions, Plaintiff has suffered, *inter alia*, a deprivation of his constitutional rights, physical injury, and severe psychological and emotional trauma.

## VI.
## CAUSES OF ACTION

### COUNT 1 – USE OF UNNECESSARY & EXCESSIVE FORCE
### VIOLATION OF 42 U.S.C. § 1983
### (AGAINST DEFENDANTS STEVENS, JONES, CAMPBELL, TAYLOR, AND WHITE IN THEIR INDIVIDUAL CAPACITIES)

50. Plaintiff re-alleges paragraphs 1-49 of this Complaint as if set forth verbatim herein.

51. Defendants Stevens, Jones, Campbell, Taylor, and White used unnecessary and excessive force when they assaulted Plaintiff, slammed him to the ground, and proceeded to beat him until they fractured his face with no lawful reason. Defendants Stevens, Jones, Campbell, Taylor, and White's unnecessary, unjustified, and excessive use of force deprived Plaintiff of his fundamental interest in being secure against cruel and unusual punishment as guaranteed to him under the Eighth Amendment to the United States Constitution.

52. As alleged above Defendants Stevens, Jones, Campbell, Taylor, and White acting under color of state law, violated the rights of Plaintiff secured by the Eighth Amendment of the U.S. Constitution.

53. At the moment, Defendants Stevens, Jones, Campbell, Taylor, and White attacked Plaintiff they lacked justification to apply any force to Plaintiff. Defendants Stevens, Jones, Campbell, Taylor, and White subjectively knew that Plaintiff posed no threat to them or to anyone. Defendants Stevens, Jones, Campbell, Taylor, and White subjectively knew that Plaintiff had not committed any crime or infraction which would justify the use of force. Defendants Stevens, Jones, Campbell, Taylor, and White directly participated in and proximately caused the above-described constitutional rights violations.

**COUNT 2 – VIOLATION OF 42 U.S.C. § 1983**
**(AGAINST DEFENDANT WARDEN MAYS**
**IN HIS INDIVIDUAL AND OFFICAL CAPACITIES)**

54. Plaintiff incorporates paragraphs 1 through 53 as if fully set forth in this Count.

55. As alleged above Warden Mays acting under color of state law, violated the rights of Plaintiff secured by the Eighth Amendment of the U.S. Constitution.

56. Defendant Mays was, at all times material to this cause, the warden of the Prison. Defendant Mays either established policies or well-established customs or knowingly acquiesced in the establishment of policies or well-established customs that were the direct and proximate cause of Plaintiff's deprivation of his constitutional rights. As a result, Defendant Mays is personally liable under Section 1983.

57. Defendant Mays' actions have caused the Prison to adopt a custom or practice of allowing excessive force to occur to prisoners.

58. Despite being put on notice of Plaintiff's allegations, his serious injuries, and being directed to properly investigate Plaintiff's grievance by TDOC and that those injuries were caused by Defendants Stevens, Jones, Campbell, Taylor, and White in Unit 1, Defendant Mays failed to investigate the cause of Plaintiff's serious medical injuries, which notably included a stab wound, an injury that should require investigation no matter where and how it was incurred. Plaintiff avers that Defendant Mays ratified the assault on him or approved and knowingly acquiesced to the unconstitutional conduct of Defendants Stevens, Jones, Campbell, Taylor, and White when he attempted to thwart Plaintiff's grievance process and failed to properly investigate or punish the offending officers. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995)("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" or where "an official with final decision making authority ratified illegal actions." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

### COUNT 3 – SUPERVISORY LIABILITY – FAILURE TO TRAIN/SUPERVISE
### VIOLATION OF 42 U.S.C. § 1983
### (AGAINST WARDEN MAYS IN HIS OFFICAL CAPACITY)

59. Plaintiff re-alleges paragraphs 1-53 of this Complaint as if set forth verbatim herein.

60. Defendant Mays failed to provide adequate training and/or supervision to his correctional officers regarding use of force. Defendant Mays has a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by the Prison's correctional officers.

61. It is clearly established that a prisoner should be free from the use of force that is not objectively reasonable.

62. As a direct and proximate consequence of the failure on the part of Defendant Mays to properly develop, implement, and otherwise devise a policy of adequate training and/or supervision for the Prison's correctional officers, Plaintiff was deprived of his civil and constitutional rights. Properly trained and supervised correctional officers would have known not to engage in the acts which resulted in the deprivation of the civil and constitutional rights of Plaintiff.

63. The failure of Defendant Mays to provide adequate and proper training and supervision, as evidenced by the actions of so many officers in this matter, and to provide adequate and proper training and supervision relating to the use of force is so grossly negligent that it amounted to deliberate indifference and disregard for the civil and constitutional rights of Plaintiff.

**COUNT 4 – INJUNCTIVE RELIEF AGAINST TENNESSEE DEPARTMENT OF CORRECTIONS DEFENDANT MAYS FOR VIOLATIONS OF THE FIRST AMENDMENT RIGHT TO ACCESS COUNSEL AND FOR EIGTH AMENDMENT VIOLATIONS**

64. Plaintiff re-alleges paragraphs 1-63, as if set forth in full herein.

65. Further, Plaintiff has now been the subject of a brutal assault by five correctional officers, each of whom still has daily access to Plaintiff. To date, none of those officers have been held accountable for their actions. These officers' conduct both prior to and following Plaintiff's injuries demonstrates a pattern of conduct by which correctional officers in the Prison maliciously and intentionally violate the constitutional rights of prisoners and face little or no consequence for doing so due to the deliberate indifference of their senior supervisors and policymakers.

66. Defendant Mays and TDOC are continuing to fail to supervise and discipline the corrections officer Defendants in this lawsuit as it relates to the Eighth Amendment rights of his

prisoners. Put another way, TDOC and Defendant Mays are presently tolerating and have a custom of tolerating severe constitutional abuses against prisoners such that correctional officers believe that they can violate those rights with impunity. In this instance, Defendant Mays has failed and refused to investigate this matter and ensured that the correctional officer Defendants still have access to harm and intimidate Plaintiff and to violate his First Amendment right to access to counsel and the attorney-client privilege by monitoring, interrupting, and arbitrarily terminating Plaintiff's contact with his counsel.

67. Accordingly, Defendants have violated and continue to violate Plaintiff's rights, and this policy or custom poses an ongoing threat of immediate and irreparable harm to Plaintiff for which an equitable remedy is necessary.

68. Requiring TDOC and Defendant Mays to prevent contact between the named Defendants and Plaintiff will have no adverse impact upon public safety or the operation of a criminal justice system.

69. Alternatively, requiring TDOC to transfer Plaintiff to a facility where he will not have contact with the Defendants will have no adverse impact upon public safety or the operation of a criminal justice system.

70. The most narrowly-tailored way to remedy Plaintiff's ongoing harm is to take all reasonable steps to prevent Plaintiff's contact with Defendants Stevens, Jones, Campbell, Taylor, and White and/or to transfer Plaintiff to a different but substantially similar facility and to mandate that corrections officers permit Plaintiff's attorney-client visits in an unmonitored location such that his right to privileged communications is protected.

# VII.
# PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each Count of the Complaint and prays for the following relief:

1. Issue service of process and serve the Defendants;

2. Issue a Preliminary Injunction compelling TDOC and Defendant Mays to implement protections to ensure Defendants Stevens, Jones, Campbell, Taylor, and White have no contact with Plaintiff and/or to transfer Plaintiff to a different but substantially similar facility and to mandate that corrections officers permit Plaintiff's attorney-client visits in an unmonitored location such that his right to privileged communications is protected;

3. Issue a Permanent Injunction to extend for a period of two (2) years that is compliant with the Prison Litigation Reform Act's tailoring requirements requiring ongoing compliance with the relief sought in Prayer 2 above;

4. Permit Plaintiff leave to amend this Complaint after reasonable discovery;

5. Empanel a jury to try this matter;

6. Award Plaintiff compensatory damages (except as to TDOC)

7. Award Plaintiff punitive damages (except as to TDOC);

8. Award Plaintiff his reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

9. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

10. Award pre-and post-judgment interest pursuant to TENN. CODE ANN. § 47-14-123 in an amount according to the proof at trial; and

11. Grant the Plaintiff such further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Brice M. Timmons*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
Melissa J. Stewart (#40638)
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
craig@donatilaw.com
melissa@donatilaw.com