IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JERMAINE GIBBS, <br><br> PLAINTIFF, <br><br> v. <br><br> TENNESSEE DEPARTMENT OF CORRECTIONS, WARDEN TONY MAYS, in his official and individual capacities; LIEUTENANT CHARLES STEVENS, in his individual capacity; CAPTAIN DARRELL JONES, in his individual capacity; OFFICER MADISON CAMPBELL, in her individual capacity; OFFICER DAKOTA TAYLOR, in his individual capacity; and OFFICER STEVEN WHITE, in his individual capacity, <br><br> DEFENDANTS. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983** <br><br> **JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiff Jermaine Gibbs ("Plaintiff"), by and through his designated attorneys, and moves this Honorable Court for preliminary injunction requiring the Tennessee Department of Corrections ("TDOC") and Defendant Warden Tony Mays ("Warden Mays") to prevent contact between the named Defendants and Plaintiff will have no adverse impact upon public safety or the operation of a criminal justice system. Alternatively, Plaintiff seeks a preliminary injunction requiring TDOC to transfer Plaintiff to a facility where he will not have contact with Defendants Lieutenant Charles Stevens, Captain Darrell Jones, or Officers Madison Campbell, Dakota Taylor, and Steven White ("Assailant Correctional Officers").

## I. Statement of the Case

This motion for preliminary injunction arises in the context of an action under 42 U.S.C. §§ 1983 ("Section 1983") and 1988 to remedy multiple civil rights violations Plaintiff suffered at the hands of a group of TDOC correctional officers, who operate daily as his correctional officers at Riverbend Maximum Security Prison (the "Prison"). Plaintiff is an inmate, who is alleging that Assailant Correctional Officers beaten, kicked, tazed and stabbed him. As a result of this unwarranted and unlawful use of force, Plaintiff suffered multiple facial fractures including a nonoperative left orbital roof fracture and a front sinus wall fracture, a massive left frontal scalp hematoma, hemorrhage of both eyes, loss of vision, and was stabbed in his left thigh.

Plaintiff's assault was not thoroughly investigated, he remains under the daily control of the Assailant Correctional Officers, and those individuals have purposefully prevented his use of the grievance process, as well as interfered with Plaintiff's basic principles of attorney client privilege and Plaintiff's right to access to counsel and in a blatant attempt to intimidate Plaintiff.

## II. Applicable Law and Argument

Federal Rule of Civil Procedure 65 establishes the relevant procedures for the granting of a Temporary Restraining Order and preliminary injunction. The standards are the same. Before a preliminary injunction may be issued, notice must be given to the adverse party. Rule 65(a)(1) requires notice to the adverse party before a preliminary injunction is issued. *See* 13 Moore's Federal Practice, § 65.21 (Matthew Bender 3d ed.). Under the general notice provision of Rule 6(c)(1), at least 5 days' notice of a motion for preliminary injunction is required. *See* 1 Moore's Federal Rules Pamphlet § 65.3 (Matthew Bender).

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to provide his case in full at a preliminary injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Texas v. Camenisch¸* 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) (internal citations omitted).

> When considering a motion for preliminary injunction, a district court must balance four factors:
>
> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the injunction;
> (3) whether issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus Inc. v. Cranmer¸* 399 F.3D 754, 760 (6th Cir. 2005)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003) (citing In re De Lorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985).

### a. Strong Likelihood of Success on the Merits

#### i. Excessive Force

Plaintiff has alleged violations of his federal constitutional rights under Section 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section

3

1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

Claims of excessive force by law enforcement officials are analyzed under either the Fourth, Eighth, or Fourteenth Amendments. The Fourth Amendment prohibition against unreasonable seizures bars excessive force against free citizens. The Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted individuals. While the Fourteenth Amendment's Due Process Clause prohibits a government official's excessive force against pre-trial detainees. *Hooper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018). Here, Plaintiff is, or was at the time of the assault, a prison, and thus the Assailant Correctional Officers' conduct is analyzed under the Eighth Amendment.

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). A prisoner must satisfy both an objective and subjective component with respect to his injury. *Id.* at 383. "In the context of a prison disturbance, the analysis ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). It is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney*, 759 F.3d 572, 581 (6th Cir.

2014). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, the excessive force on Plaintiff was inflicted while transporting between pods after he had been medically evaluated to have only sustained minor scratches and bruising during an inmate-on-inmate incident. Additionally, the excessive force occurred while Plaintiff was secured in handcuffs behind his back, and in retaliation for Correctional Officer Michael Maerki ("Officer Maerki") being injured by Inmate Tevin Lumpkin during the altercation. Furthermore, the use of force was not reported, nor was it properly investigated, and the injuries to Plaintiff were catastrophic. Plaintiff suffered multiple facial fractures including a nonoperative left orbital roof fracture and a front sinus wall fracture, a massive left frontal scalp hematoma, hemorrhage of both eyes, loss of vision, and he was stabbed in his left thigh.

No evidence exists as to the reasons for the Assailant Correctional Officers actions because they attempted to hide their actions. They created no use of force reports to suggest that anything Plaintiff did caused their actions, because they wished for no evidence of their actions. Their failures to report any alleged incident which authorized their use of force is their downfall. Their actions were malicious and sadistic, and taken in retaliation for injuries to Officer Maerki, not caused by Plaintiff. The extent of Plaintiff's significant injuries speak for themselves. Here, no force was authorized against Plaintiff, and his injuries evidence that any argument that force was authorized is claptrap.

"To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty to protect against the use of excessive force," *Binary v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Here, each of the Assailant Correctional Officers actively participated in the use of excessive force against Plaintiff, and they each owed Plaintiff a duty to protect him against the use of excessive force.

Plaintiff's likelihood of success on the merits in this matter is all but assured. Plaintiff was protected by the Eighth Amendment for all of his confinement. Additionally, Plaintiff has been represented by experienced civil rights counsel at all stages of this litigation who have artfully pled multiple constitutional claims stemming from a great variety of injuries.

### ii. Supervisory Liability

To prove supervisory liability, a plaintiff must show that the supervisor condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

TDOC, through Warden Mays, has a duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by the Prison's correctional officers. The failure of Warden Mays to provide adequate and proper training and supervision is evidenced by the actions of so many officers in this matter, and is so grossly negligent that it amounted to deliberate indifference and disregard for the civil and constitutional rights of Plaintiff.

Furthermore, TDOC and Warden Mays continue to fail to supervise and discipline the Assailant Correctional Officers in this lawsuit as it relates to the Eighth Amendment rights of

6

prisoners. Put another way, TDOC and Warden Mays are presently tolerating and have a custom of tolerating severe constitutional abuses against prisoners such that correctional officers believe that they can violate those rights with impunity. Here, Warden Mays has failed and refused to investigate this matter and ensured that the Assailant Correctional Officers still have access to harm and intimidate Plaintiff and to violate his First Amendment right to access to counsel and the attorney-client privilege.

TDOC and Warden Mays have violated and continue to violate Plaintiff's rights and this policy or custom poses an ongoing threat of immediate and irreparable harm to Plaintiff for which an equitable remedy is necessary.

### b. Irreparable Harm

Plaintiff will suffer irreparable injury unless this Court issues a preliminary injunction. A plaintiff has "the burden of establishing a clear case of irreparable injury and of convincing the Court that the balance of injury favor[s] the granting of the injunction." *Bd. of Educ. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 860 (S.D. Ohio 2016). "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. V. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Here, Plaintiff has alleged that the actions of the Assailant Correctional Officers infringed on his constitutional rights. Their continued presence and oversight of Plaintiff all but assures that Plaintiff lives in fear, and is being used as an intimidation tactic to violate Plaintiff's First Amendment right to access to counsel, the attorney-client privilege, and to bring this suit.

7

Case 3:23-cv-01047    Document 6    Filed 10/09/23    Page 7 of 10 PageID #: 52

"When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Malam v. Adducci*, 469 F. Supp. 3d 767, 781-782, 2020 U.S. Dist. LEXIS 112820, *30-31, 2020 WL 3512850 (citing *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2nd Cir. 1984)).

### c. Plaintiff's Injury Outweighs Harm to Others

The potential harm to Plaintiff from the continuous oversight and supervision by the Assailant Correctional Officers outweighs any harm to another. In fact, removing the Assailant Correctional Officers from Plaintiff's continuous oversight and supervision causes harm to no other party. Removing the Assailant Correctional Officers from Plaintiff's continuous oversight and supervision will not harm the Prison or the Assailant Correctional Officers. Conversely, the failure to implement such injunctive relief will cause irreparable harm to Plaintiff by forcing him to live every day in fear for his safety and undermining his relationship with his attorneys.

### d. Issuance of a Preliminary Injunction Will Serve the Public Interest

There exists no adverse public interest which would prevent the issuance of a preliminary injunction. The Prison employs hundreds of correctional officers and has the ability to assign other correctional officers to replace the Assailant Correctional Officers. Warden Mays is choosing to keep the Assailant Correctional Officers around Plaintiff. All prisons must ensure that the rights afforded to prisoners under the Constitution are protected, including the rights of prisoners to grieve violations and utilize the judicial system without fear of retaliation. It is in the public interest to ensure that any grievances or utilization of the judicial system by prisoners occur without intimidation, fear, or retaliation.

### III. Conclusion

When balancing the immediate and irreparable harm to Plaintiff caused by allowing the Assailant Correctional Officers to constantly oversee and supervise Plaintiff, the Court should find that the Plaintiff's needs far outweigh any interest of the Defendants. If Plaintiff is not awarded the relief sought, his safety, his mental health, and his confidence in his attorneys moving forward with this cause of action will be impacted.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully requests that this Court issue the following Preliminary Injunctions:

1. That TDOC and Warden Mays be enjoined from allowed its employees Defendants Lieutenant Charles Stevens, Captain Darrell Jones, or Officers Madison Campbell, Dakota Taylor, and Steven White from having any contact with Plaintiff;

2. That Defendants Lieutenant Charles Stevens, Captain Darrell Jones, or Officers Madison Campbell, Dakota Taylor, and Steven White are hereby restrained and enjoined from intimidating, abusing, threatening, communicating with or being withing 100 feet of Plaintiff.

/s/ *Brice M. Timmons*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
Melissa J. Stewart (#40638)
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
craig@donatilaw.com
melissa@donatilaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the aforementioned motion is being served contemporaneously with the Complaint, Exhibits, and Summons via private process server.

      */s/Brice M. Timmons*

10

Case 3:23-cv-01047　　Document 6　　Filed 10/09/23　　Page 10 of 10 PageID #: 55