IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JERMAINE GIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:23-CV-01047 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| TENNESSEE DEPARTMENT OF CORRECTIONS, WARDEN TONY MAYS, in his official and individual capacities; LIEUTENANT CHARLES STEVENS, in his individual capacity; CAPTAIN DARRELL JONES, in his individual capacity; OFFICER MADISON CAMPBELL, in her individual capacity; OFFICER DAKOTA TAYLOR, in his individual capacity; STEVEN WHITE, in his individual capacity; and DANIEL QUEVEDO in his individual capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jermaine Gibbs ("Plaintiff") brought this lawsuit against Defendants Tennessee Department of Corrections ("TDOC"), Warden Tony Mays (in his official and individual capacities), and the following individuals in their respective individual capacities: Lieutenant Charles Stevens, Captain Darrell Jones, Officer Madison Campbell, Officer Dakota Taylor, Steven White,[1] and Daniel Quevedo.

---

[1] At the time of initial filing, Plaintiff listed Steven White as one of the defendants in this matter. (Doc. No. 1). In filing the "First Amended Complaint", Plaintiff omitted Steven White as a named defendant and explained that he mistook Steven White for new Defendant Daniel Quevedo and, as a result, named Steven White by mistake. (Doc. No. 47 at ¶ 53). Defendants, in their subsequent two motions to dismiss, went along with Plaintiff's change and removed White from the captions in those documents. (Doc. No. 52; Doc. No. 60). Consistent with the parties' treatment of Steven White, the Court below directs that he be terminated as a Defendant, though at times herein the Court refers to him as if he was still a Defendant.

Pending before the Court is "Defendants' Motion to Dismiss" (Doc. No. 52, "Motion"), whereby all defendants except Quevedo[2] and White ("Defendants") seek to dismiss the suit under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants support the Motion with an attached memorandum of law (Doc. No. 52-1). Plaintiff responded with "Plaintiff's Response to Defendants' Motion to Dismiss [ECF 52] and Incorporated Memorandum of Law" (Doc. No. 53, "Response"). Thereafter, Defendants filed "Defendants' Reply in Further Support of Motion to Dismiss" (Doc. No. 56, "Reply").

For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part.

RELEVANT BACKGROUND[3]

Plaintiff is an inmate who was formerly incarcerated at Riverbend Maximum Security Prison ("Prison"). (Doc. No. 47 at ¶¶ 1, 14). TDOC, an agency of the state of Tennessee, operates the Prison. (*Id.* at ¶¶ 1, 7). At the time of the events implicated in Plaintiff's First Amended Complaint (Doc. No. 47, "Amended Complaint"), TDOC employed Defendant Tony Mays as warden of the Prison. (*Id.* at ¶ 8). Additional Defendants Captain Darrell Jones ("Capt. Jones"), Lieutenant Charles Stevens ("Lt. Stevens"), Madison Campbell, Dakota Taylor, Steven White, and Daniel Quevedo all either currently are, or at the times of the events alleged in the Amended

---

[2] When Defendants filed the instant Motion, "[n]ewly named Defendant Daniel Quevedo [was] not . . . represented by [counsel for the other Defendants]." (Doc. No. 52 at n. 1). In the intervening period, the other Defendants' counsel became counsel for Quevedo and filed a separate motion to dismiss on his behalf. (See Doc. No. 60).

[3] The facts contained herein come from the Amended Complaint. For purposes of the instant Motion and pursuant to the typical mechanisms of assessing motions under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts in the Amended Complaint as true, except to the extent that this Order qualifies them (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true (because, for example, they are not really facts at all but rather legal conclusions) but rather are set forth to indicate what Plaintiff *claims* to be true. Throughout this Order, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even with the awareness that any such alleged fact may ultimately prove false.

Complaint were, correctional officers working for TDOC. (*Id.* at ¶¶ 9-13). Quevedo has since left his position. (*Id.* at ¶ 13). In addition to their regular duties, Campbell and Taylor served on the Corrections Emergency Response Team ("CERT") during the time of the events alleged, with Campbell serving as the group's commander. (*Id.* at ¶¶ 11-12). As all work or worked for a Tennessee state agency, each Defendants acted under the color of law.[4] (*Id.* at ¶¶ 8-13).

The dispute originated on April 11, 2023, when another inmate engaged Plaintiff in a physical altercation. (*Id.* at ¶ 14). Officer Michael Maerki attempted to stop the incident by tackling Plaintiff, but the other inmate stuck Maerki with a broomstick and broke Maerki's hand. (*Id.* at ¶¶ 15-16). This prompted a call from the correction officers' radios, stating that Maerki was stabbed (which was inaccurate) and that the situation required assistance. (*Id.* at ¶ 17). Members of CERT responded, ordered the fight to stop, and dispensed chemical agents to quell the unrest, which resulted in both inmates either retreating or complying with instructions. (*Id.* at ¶¶ 18-19). After lying down on the ground awaiting the next steps, Plaintiff was handcuffed by an unidentified individual. (*Id.* at ¶¶ 19-20). Medical staff at the Prison evaluated Plaintiff and concluded that the fight led only to "minor scratches and bruising." (*Id.* at ¶ 21).

After Plaintiff's evaluation, members of CERT led Plaintiff to a different wing of the Prison. (*Id.* at ¶ 22). At this point, Taylor picked up Plaintiff and dropped him on his head six times. (*Id.*). Plaintiff then was dragged by an unidentified individual or individuals and "beaten, kicked, tazed [sic], and stabbed" by Capt. Jones, Lt. Stevens, Campbell, Taylor, and Quevedo. (*Id.* at ¶¶ 22-23). Specifically, Lt. Stevens "chok[ed] him until he nearly lost consciousness, punch[ed] him in his right eye, and stomp[ed] him" and Campbell tased him while he was handcuffed. (*Id.* at ¶¶

---

[4] The Court assumes *arguendo* the truth of this allegation, although it likely is more a legal conclusion (not entitled to the presumption of truth herein) than a factual allegation (entitled to a presumption of truth herein).

25-26). Plaintiff's injuries prompted transport to Vanderbilt University Medical Center ("VUMC") where medical personnel diagnosed Plaintiff with the following injuries: "multiple facial fractures including a nonoperative left orbital roof fracture and a front sinus wall fracture, a massive left frontal scalp hematoma," hemorrhages in both eyes, loss of vision, and stab wounds in his left thigh. (*Id.* at ¶¶ 23, 27).

After the incident, Lt. Stevens made physical copies of videorecording related to the incident on DVD but requested only one particular video (the "Unit 4 Delta Pod" video), thus intentionally excluding the videorecording of the assault on Plaintiff by the correctional officers (which, apparently, was not captured on the Unit 4 Delta Pod video). (*Id.* at ¶ 28). This allegedly "incomplete and misleading" video (meaning, apparently, a copy of the Unit 4 Delta Pod video) was what Lt. Stevens gave to Assistant Warden Ernest Lewis, who in turn provided the video to Warden Mays. (*Id.*). Upon his return to the Prison, Plaintiff remained in the infirmary for observation and sought grievance forms "from each and every correctional officer that he encountered," but each officer refused to provide Plaintiff his desired forms. (*Id.* at ¶ 29). Plaintiff further avers that Warden Mays had knowledge, or at least reason to know, of the alleged misdeeds by his officers and that he took affirmative action to stop any possible investigation into Plaintiff's injuries. (*Id.* at ¶¶ 31, 32).

Without Plaintiff's involvement, on April 18, 2023, TDOC opened an investigation stemming from an unnamed correctional officer complaining of officers' use of excessive force within the Prison. (*Id.* at ¶ 33). Special Agent Lisa McCallum conducted the investigation and determined that Campbell did use a taser on Plaintiff and yet did not report such use of force. (*Id.* at ¶¶ 34, 35).

On April 21, 2023, Plaintiff finally convinced prison medical professional Jennifer Miller to provide him with a grievance form. (*Id.* at ¶ 36). Plaintiff completed the form and handed it back to Miller, who passed it on to a corrections officer (last name Kelly), who "placed the grievance in the grievance box at the clinic." (*Id.*). Plaintiff alleges that Miller proved to be his "only advocate" following his assault." (*Id.* at ¶ 37).

On April 24, 2023, Miller escorted Plaintiff's attorney to meet Plaintiff at the infirmary. (*Id.*). Upon Plaintiff's attorney's arrival at the Prison, Miller was ordered to escort the attorney off the premises, but when the attorney threatened legal action, those in charge permitted him to visit with Plaintiff. (*Id.* at ¶ 38). During his counsel's visit, multiple correctional officers would not allow the two to meet in private, and to get the officers to leave, the attorney once again had to threaten legal action. (*Id.* at ¶ 39). Though they left the room, the correctional officers stayed within earshot of the conversation. (*Id.*). The correctional officers interrupted their conversation at various times during the meeting, before terminating the meeting prematurely. (*Id.* at ¶ 40). On April 26, 2023, Plaintiff's counsel sent to Warden Mays ("via certified mail, return receipt") "a discovery preservation letter and public records request," requesting all pertinent records from the incident on April 11. (*Id.* at ¶ 43). Nevertheless, the "pertinent [video] footage" was destroyed. (*Id.*).

On May 2, 2023, the first-line supervisor marked the grievance as "non-grievable" due to its delayed filing more than seven days after the incident and, according to the supervisor, its improperly containing "multiple issues" for grievance. (*Id.* at ¶ 44). In reality, the grievance contained only a single issue, namely the assault that is the subject of this lawsuit. (*Id.* at ¶ 45). Plaintiff appealed this ruling, first to the Grievance Chairperson and then to Warden Mays, both of whom agreed with the supervisor's assessment. (*Id.* at ¶¶ 46-47). Plaintiff further appealed to Kevin Genovese, the Deputy Assistant Commissioner of Prison Operations for TDOC, who

thought the grievance deserved a proper response and advised the supervisor to address its merits. (*Id.* at ¶ 48). The supervisor addressed Plaintiff's allegations and opined that no wrongdoing on the part of TDOC employees occurred. (*Id.* at ¶¶ 49-50). Plaintiff alleges that this was due to the supervisor not viewing "the appropriate video footage," i.e., footage of the incident that supposedly occurred while the corrections officers transported him between wings. (*Id.*).

Plaintiff filed his initial complaint in this case (Doc. No. 1) on October 6, 2023. (*Id.* at ¶ 51). In the period between that filing and the subsequent filing of the Amended Complaint, Plaintiff alleges, numerous retaliatory actions were taken by Lt. Stevens. (*Id.* at ¶¶ 51-53). After TDOC assigned Lt. Stevens as Plaintiff's case manager, Lt. Stevens gave away Plaintiff's belongings to other inmates, urinated on Plaintiff's property, instigated others to have physical conflicts with Plaintiff, and on one occasion walked up and punched Plaintiff in the face, causing a new orbital fracture in his right eye. (*Id.* at ¶¶ 51, 53, 55). And yet Defendant TDOC "refused for months to remove Lt. Stevens from this position of authority over Plaintiff, despite a pending lawsuit." (*Id.* at ¶ 51). Plaintiff claims in effect that some of his allegations received corroboration from various sources, including an unnamed TDOC corrections officer who contacted Plaintiff's counsel and a subsequent internal TDOC investigation. (*Id.* at ¶¶ 53, 55). Due to the alleged continuing actions by Lt. Stevens, Plaintiff was granted transfer to West Tennessee State Penitentiary on February 29, 2024.

Plaintiff then filed the Amended Complaint on April 8, 2024, alleging the following claims under 42 U.S.C. § 1983 and the Eighth Amendment of the Constitution: (1) "Use of Unnecessary and Excessive Force" against Lt. Stevens, Capt. Jones, Campbell, Taylor, and Quevedo; (2)

Improper Policy Making[5] against Warden Mays in his official and individual capacities; (3) "Supervisory Liability - Failure to Train/Supervise" against Warden Mays in his official capacity; and (4) "Retaliation in Violation of the First Amendment" against Lt. Stevens. (*Id.* at ¶¶ 59-81). Plaintiff seeks compensatory and punitive damages as well as appropriate attorney's fees, costs, expenses, and interest. (*Id.* at 17 (Prayer for Relief)). Defendants then filed the instant Motion. (Doc. No. 52).

## LEGAL STANDARD

The Court must take all factual allegations within the complaint as true when reviewing a motion to dismiss for failure to state a claim, under Federal Rule Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that survives a motion to dismiss must contain sufficient allegations of factual matter, that when accepted as true, state a facially plausible claim. *Id.* Facially plausible claims are those that have sufficient factual content such that a court may draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Id.*

On the other hand, well-pled factual allegations allow the court to assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, and mere recitations of the elements of a cause of action are insufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), (cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018)). Moreover, factual allegations that are merely consistent with the

---

[5] Plaintiff does not title this count in a similar way to the other three alleged. The Court has applied this descriptive title for convenience based on the specific allegations present in the Amended Complaint. (See Doc. No. 47 at ¶¶ 63-68).

defendant's liability do not satisfy the plaintiff's burden, as mere consistency does not establish the plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief, including any "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. Then, the question is whether the remaining allegations plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule Civil Procedure 8 and must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

In general, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Federal Rule Civil Procedure 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Federal Rule Civil Procedure 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.* [*"Ohio State Univ."*][6], 219 F. Supp. 3d 645, 652-653 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-792 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). To put it only slightly differently, "[a] Rule 12(b)(6) movant 'has the

---

[6] Given the forthcoming mention of another case with a leading party referred to as "Doe," the Court elects to refer to this case as "*Ohio State Univ.*" for purposes of the rest of this Order.

burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved in a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

<u>DISCUSSION</u>

## I. Failure to State a Claim Against TDOC

At the outset, the Court agrees with Defendants that Plaintiff fails to implicate TDOC in any one of the four counts in the Amended Complaint. (Doc. No. 52 at 1, n. 2; Doc. No. 52-1 at 1, n.2). Plaintiff implicates the following defendants in the various counts as follows: Lt. Stevens, Capt. Jones, Campbell, Taylor, and Quevedo in Count I ("Use of Unnecessary and Excessive Force"); Warden Mays in Count II (Improper Policy Making) and Count III ("Supervisory Liability - Failure to Train/Supervise"); and Lt. Stevens in Count IV ("Retaliation in Violation of the First Amendment"). (Doc. No. 47 at ¶¶ 59-81). Nowhere in those four counts does Plaintiff mention or name TDOC. The Court notes that multiple other courts have found it appropriate to dismiss defendants should a plaintiff fail to name them in a claim. *See Hill v. Bd. of Dirs.*, No. 2:23-cv-01298-JLS-BFM, 2024 WL 3677993, at *4 (C.D. Cal. Aug. 5, 2024) (dismissing with prejudice four defendants "not named in any Cause of Action"); *Gagliani v. Lexington Cnty. Sheriff's Dep't*, No. 3:20-3737-CMC-SVH, 2022 WL 3974192, at *20 n.9 (D.S.C. Sep. 1, 2022) (dismissing a defendant who appears in the caption and the factual recitation but does not appear

in any cause of action). If the goal of a complaint is to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," incumbent upon the plaintiff to tie the given defendant to some claim for which liability may be imposed. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Here, Plaintiff does not do so with respect to TDOC.

This Court will not create a claim against TDOC and has no duty to do so when Plaintiff has not "spelled out [a claim] in his pleading." *See Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007) (quoting *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (internal quotation marks and parentheses omitted). In fairness to Plaintiff, he makes clear that he does not actually intend to make a claim against TDOC—not one for damages, anyway. (Doc. No. 47 at ¶ 7) (stating that TDOC is being sued not for damages but rather "solely for the purposes of injunctive relief").[7] As a result, the Court will dismiss TDOC from this case.[8]

---

[7] The reference to potential injunctive relief here is puzzling. Although Plaintiff sought preliminary injunctive relief prior to the filing of the Amended Complaint, and indeed obtained some via a Consent Order (Doc. No. 40), he has not sought any injunctive relief since that time, and the Amended Complaint does not seek injunctive relief. (Doc. No. 47 at 17 at n. 7).

[8] Though the Court does not construe Plaintiff's claims in this way, it notes that if Plaintiff had intended to imply TDOC's culpability through a theory of vicarious liability/*respondeat superior*, such an implication would have failed to state a claim because liability under 42 U.S.C. § 1983 cannot be based on such legal theories. *See Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995)). Instead, any claim for damages against TDOC would have to be a so-called *Monell* claim, *i.e.*, a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A claim of municipal liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by TDOC. *Monell*, 436 U.S. at 690-91. A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013). And although Plaintiff in the Amended Complaint complains in various ways about Defendant Mays's failure to create adequate policies, and also complains (for reasons the Court simply does not understand) obliquely about "the insufficient" policies of — and ratification of individual Defendants' actions

## II. Alternatively, TDOC (as well as Defendant Mays in his official capacity) must be dismissed based on Eleventh Amendment Immunity.

Alternatively, TDOC is subject to outright dismissal because it enjoys Eleventh Amendment Immunity. And this immunity extends to Warden Mays in his official capacity[9] because a claim against a TDOC employee in his official capacity is really a claim against TDOC. As one district court cogently explained:

> As an initial matter, the Court notes a suit [for damages rather than injunctive relief] against a defendant in his or her official capacity is treated as an action against the governmental entity the officer represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *see, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992). In an action against a State officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Defendants Mary Brown, Parker, Settles, Dustin Brown, Neely, and Doby were employees at BCCX at all relevant times. Therefore, Plaintiff's official-capacity claims are brought against those Defendants in their official capacities as Tennessee Department of Correction ("TDOC") employees. *See Graham*, 473 U.S. at 166; *see also **Monell** v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").
>
> The Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Quern v. Jordan*, 440 U.S. 332, 320–45 (1979). Tennessee has not waived its immunity. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). TDOC is an agency of the State of Tennessee and, as such, it and its employees sued in their official capacities are entitled to Eleventh Amendment immunity. *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997); *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988). Accordingly, Plaintiff's claims for money damages against

---

by—"the Prison," nowhere does the Amended Complaint makes anything cognizable as a *Monell* claim against TDOC, perhaps because Plaintiff realizes full well that any such claim would be barred by Eleventh Amendment immunity anyway.

[9] Notably, Defendant Mays is the only Defendant sued in his official capacity (as well as his individual capacity). The other individual Defendants are sued only in their respective individual capacities.

all named Defendants in their official capacities are barred by the Eleventh Amendment, as are any claims against TDOC itself.[1] *See Berndt*, 796 F.2d at 881.

*Haynes v. Aramark Corr. Servs., Inc.*, No. 318CV00175JRGDCP, 2019 WL 3241173, at \*1–2 (E.D. Tenn. July 18, 2019). The Court need say little more here. *All* claims against TDOC (including any that might request solely injunctive relief ) are necessarily barred; this is true even though a claim against a TDOC *official* in his official capacity is not necessarily barred by Eleventh Amendment immunity.[10] And all claims against Defendant Mays in his official capacity are dismissed to the extent that seek anything other than injunctive relief (i.e., seek damages). And since Plaintiff seeks no injunctive relief via the Amended Complaint, as explained in a footnote above, the claims against Defendant Mays in his official capacity are dismissed in their entirety. Thus, there remaining only claims against the individual defendants, in their respective individual capacities.

### III. Exhaustion of Internal Prison Grievance Process

An individual who claims that his or her constitutionally or federally guaranteed rights have been violated by an individual acting under the color of law can seek redress through 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167, 172 (1961), *overruled on other grounds*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978). To do so, the individual must show that: (1) the offender acted under the color of law; and (2) by acting under the color, of law, the offender has deprived the individual of a right "'secured by the Constitution and the laws of the United States.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (quoting 42 U.S.C. § 1983). In the case at hand, that

---

[10] Claims against a TDOC official in his official capacity are not barred by Eleventh Amendment immunity, to the extent that they seek injunctive relief. This because in the context of requests for injunctive relief (unlike requests for damages), for legal/technical/constitutional reasons on which the Court need not dwell herein, claims against a state official in his or her official capacity are *not* treated as claims against the state.

right is the Eighth Amendment's protection against "cruel and unusual punishments." U.S. Const. amend. VIII.

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e et seq., serves to reduce the amount of court proceedings stemming from prisoner complaints by requiring prisoners to exhaust their respective internal prison grievance process before filing in court. *Jones v. Bock*, 549 U.S. 199, 202 (2007). This requirement holds for "all inmate suits about prison, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Additionally, the PLRA permits courts to dismiss claims outright before the prisoner exhausts his or her respective grievance process if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

However, courts have held that prisoners need exhaust only those remedies that are available to them. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)). There are three key situations when apparent remedies created by a prison grievance process become unavailable:

> (1) "when (despite what regulations or guidance materials may promise) [the grievance process] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb*, 52 F.4th at 292 (quoting *Ross*, 578 U.S. at 643-44).

Different circuits have adopted different approaches in terms of how to assess whether the inmate has exhausted their administrative remedies before filing suit, with several using various forms of a burden-shifting approach. *See Hubbs v. Suffolk Cnty. Sherrif's Dept.*, 788 F.3d 54, 59

(2d Cir. 2015); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020). As for the Sixth Circuit, it has held that a plaintiff who contends that he or she was prevented from exhausting his or her remedies places the burden on the defendants, who must then "present evidence showing that the plaintiff's ability to exhaust was not hindered." *Lamb*, 52 F.4th at 295 (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)). Further, there is no one standard of what constitutes the availability of any given set of prison grievance mechanisms, and the Court must address each set of circumstances as they occur "in practice" in the given case. *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 422 (6th Cir. 2023) (quoting *Doe 8-10 v. Snyder*, 945 F.3d 951, 993 (6th Cir. 2019)).

Defendants seek to dismiss each claim by arguing that Plaintiff failed to exhaust the grievance process provided by TDOC. (Doc. No. 52-1 at 10, 12, 14). Though related, each argument deals with a different portion of the factual allegations set forth in the Amended Complaint. Therefore, the Court will address in turn the arguments as to each count.

a. Count I ("Use of Unnecessary and Excessive Force") against Stevens, Jones, Campbell, Taylor, and Quevedo

Defendants first take aim at Plaintiff's count against Lt. Stevens, Capt. Jones, Campbell, Taylor, and Quevedo for using what Plaintiff describes as "Unnecessary and Excessive Force." Defendants point to the delay between the alleged incident, which occurred on April 11, 2023, and the filing of the grievance, which occurred on April 21, 2023. (*Id.* at 11). This, per Defendants, is a direct violation of the policy instituted by TDOC and the Prison, which mandates that an inmate file his or her grievance no later than seven days after the alleged incident. (*Id.*). And , according to Defendants, this policy-violating tardiness means that Plaintiff failed to exhaust his administrative remedies.

Plaintiff responds with citations to *Ross* and points to his allegation from paragraph twenty-nine of the Amended Complaint: that he sought grievance forms "from each and every correctional officer that he encountered" upon his return from VUMC, but none would provide them to him. (Doc. No. 53 at 11). In their reply, Defendants attempt to rebut this statement through citations to a case from the Eastern District of Michigan, which held that in situations such as these, inmates countering failure to exhaust defenses "must offer competent and specific evidence showing that [the inmate] indeed exhausted his remedies or was otherwise excused from doing so." (Doc. No. 56 at 2) (quoting *Sango v. Johnson,* No. 13012808, 2014 WL 8186701, at *5 (Oct. 29, 2014)).[11]

Essentially, Defendants ask the Court to adopt the *Sango* standard for situations when a defendant moves to dismiss under Rule 12(b)(6) based in relevant part on an alleged failure to exhaust remedies. The Court declines to do so.[12] The "competent and specific evidence" standard outlined in *Sango*—which was invoked in response to a motion *for summary judgment*— demands an evidentiary showing perhaps appropriate for motions for summary judgment under Federal Rule of Civil Procedure 56, but not for motions to dismiss for failure to state a claim under Rule

---

[11] The Court notes that the quoted statement from *Sango* appears to be the construction of the *Sango* court alone, as the court did not cite any authority for that specific statement. No. 13012808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014). Likewise, the case cited by the *Sango* court before and after making the quoted statement, *Jones v. Bock*, 549 U.S. 149 (2007), neither makes nor refers to anything like the quoted statement.

[12] The Court has found two (and only two) instances where "competent and specific evidence" was the standard used in a case where a defendant challenged the complaint under Rule 12(b)(6). The first case refers to "competent and specific evidence" in the context of attorney-client privilege in a securities fraud action. *In re Omnicom Group Inc., Sec. Litig.*, 223 F.R.D. 400, 404 (S.D.N.Y 2006). The other case is *Jones v. Strada*, No. 3-23-cv-9-KAC-DCP, 2025 WL 224634 (E.D. Tenn. Jan. 16, 2025), and the Court concedes that this one appears applicable to the instant case because the standard was applied specifically to the issue of failure to exhaust. However, *Jones* invokes the standard with a direct citation to *Sango*—which, again, is inapplicable in that it involved a motion for summary judgment—and no further support. *Id.* at *2. This Court respectfully declines to follow such reasoning in this instance, as this Court of course is free to do. *See United States v. Edwards*, 456 F. Supp. 3d 953, 955 (M.D. Tenn. 2020) (noting that neither Court of Appeals decisions from circuits other than the Sixth Circuit, nor "district court opinions from around the country, including those from within this circuit" constitute binding precedent on this Court).

12(b)(6). During motions for summary judgment, should a moving party meet its initial burden of showing no genuine dispute over material facts, the non-movant must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In contrast, motions to dismiss for failure to state a claim simply ask whether the non-moving party has shown a plausible claim whereby the court may grant relief. *Iqbal*, 556 U.S. at 679. Motions under Rule 12(b)(6) generally do not consider information outside of the complaint and any attachments thereto, but rather only those factual allegations present in the operative complaint, unless the filing party wishes to instead convert their motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The exception to this general rule is that: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss [without converting it into a motion for summary judgment under Rule 56] so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); see also *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92.

The *Sango* standard of "competent and specific evidence" requires the court, should a defendant raise failure to exhaust the internal grievance process as an affirmative defense, to focus on things that generally *Iqbal* and *Twombly* do not focus on, namely, whether the plaintiff loses *despite* setting forth factual matter that (when taken as true) plausibly suggests an entitlement to relief. *Sango*, 2014 WL 8186701, at *5; *Iqbal*, 556 U.S. at 678. The standard also requires the Court, contrary to *Iqbal* and *Twombly*, to *not* accept as true factual allegations suggesting that avenues for exhaustion of remedies were not available to the plaintiff.

This Court has recognized a need for plaintiffs to present "significant probative evidence" when challenged over their exhaustion of a grievance process, but only on motions for summary judgment, not on motions to dismiss under Rule 12(b)(6). *Middlebrooks v. Helton*, No. 3:23-cv-00054, 2025 WL 790947, at *5 (M.D. Tenn. March 11, 2025) (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). In contrast, when faced with motions to dismiss in such cases, this Court has reasserted the strength of *Iqbal*'s presumption and that, should those factual allegations alone state a credible assertion that the plaintiff "attempted to file grievances but his request[s] for a grievance form were ignored," dismissal is not the appropriate action. *Strader v. Cumberland Cnty.*, No. 2:19-cv-00045, 2020 U.S. Dist. LEXIS 217857, at *2 (M.D. Tenn. Nov. 20, 2020).

Absent the evidentiary standard used in *Sango*, this issue is straightforward. Plaintiff claims to have petitioned "each and every correctional officer that he encountered" for a grievance form and was ignored or denied. (Doc. No. 47 at ¶ 29). Defendants, in relying on the ruling in *Sango*, fail to refute this assertion (as was virtually inevitable, given the very limited tools at the disposal of a non-movant at this juncture). Taking the allegations Plaintiff makes in his Amended Complaint as true (and recognizing what allegations Plaintiff has *not* made, i.e., allegations somehow affirmatively showing that failed to exhaust his remedies despite them being available to him), he sets out a scenario where: (1) his rights against cruel and unusual punishment have been violated by those Defendants implicated in Count I; (2) those Defendants acted under the color of state law; and (3) he attempted to comport with the internal process; but (4) those in power thwarted his ability to do so. (*Id.* at ¶¶ 13-18, 22-26, 29). These allegations support a lack (or excusal) of a failure to exhaust, and Defendants do not argue that Plaintiff has failed to show a substantive plausibility of an entitlement to relief on Count I. Therefore, Count I survives.

Relatedly, the Court will not consider dismissing any other count on the specific grounds that Plaintiff's grievance was untimely. But the Court will consider any other argument(s) that Plaintiff failed to properly exhaust his remedies.

    b. Count II (Improper Policy Making) and Count III ("Supervisory Liability - Failure to Train/Supervise"), Both Against Warden Mays

Next, Defendants argue that Plaintiff "failed to grieve anything close to inappropriate policy-making or supervisory actions which he now brings in his FAC under Counts 2 and 3 against Warden Mays," meaning that Plaintiff failed to exhaust the grievance process with respect to Counts 2 and 3. (Doc. No. 52-1 at 13). In support of that argument, Defendants present a declaration by the Grievance Chairperson, who avers that "Plaintiff's first grievance dated April 21, 2023 . . . contains no allegations with respect to the actions or inactions of then-Warden Tony Mays." (Doc. 52-2 at ¶ 17). A copy of the grievance was filed as Exhibit C to both the original complaint and the Amended Complaint, (Doc. Nos. 1-3; 50-3), and it entirely supports this averment. To be clear, the Court is not considering the averment in the declaration (which was neither part of the Amended Complaint nor referred to or central to the Amended Complaint). Instead, the Court is considering the grievance itself, which *was* made part of the Amended Complaint—and thus (as Plaintiff does not dispute) is the kind of thing that *can* affirmatively support a finding of a lack of exhaustion even at the motion-to-dismiss stage.

Plaintiff does not dispute that his grievance did not include the inappropriate policy-making or supervisory actions that underlie Counts 2 and 3 against Warden Mays. Instead, he asserts, in conclusory fashion: (i) that Counts II and III are within the scope of his grievance anyway because they are "related to the initial assault" that was the subject of the grievance; and (ii) that the exhaustion defense is waived (including as to Counts II and III) because "prison officials rendered a final decision that addressed the merits" of Plaintiff's grievance. (Doc. No. 53 at 9, 9-10).

The Court rejects Plaintiff's underdeveloped argument that the substance of Counts II and III are within the scope of his grievance merely because they "related to" the initial assault. The Counts II and III are much more specific in their basis for liability, and much more specifically directed at a particular Defendant (Warden Mays), than anything in Plaintiff's April 21, 2023 grievance. The substance of Counts 2 and 3 went unmentioned and thus was not within the scope of that grievance. *See, e.g., Johnson v. Wilkinson*, No. 1:19-CV-437, 2020 WL 5506170, at *3 (W.D. Mich. May 8, 2020) (finding that when something went unmentioned in a grievance, it was not within the scope of the grievance), *report and recommendation adopted*, No. 1:19-CV-437, 2020 WL 5503601 (W.D. Mich. Sept. 11, 2020); *Bennett v. Winn*, No. 17-CV-12249, 2018 WL 3853601, at *4 (E.D. Mich. Aug. 14, 2018) (finding that because "[t]he [g]rievance does not sufficiently identify [defendant James] Zummer. Thus, Bennett did not exhaust his claims against Zummer").

The problem here is not merely technical; Plaintiff's grievance failed to put anyone on notice that Plaintiff had a complaint about inappropriate policy-making or supervisory actions on the part of Warden Mays, so that TDOC could address this complaint (and thereby potentially avoid the need for a lawsuit). *See id.* (noting that when an employee is not identified in a grievance, a state department of corrections is deprived of "provide fair notice . . . of the identity of the employee implicated in the [g]rievance").

The Court likewise rejects Plaintiff's affirmative argument of waiver, which (as it relates to Counts II and III) depends entirely on the argument that the Court just rejected. That is, to the extent that there was a "final decision on the merits" of" Plaintiff's grievance, that final decision would not have implicated the substance of Counts II and III (as would be necessary to embrace

Plaintiff's affirmative argument of waiver of an exhaustion defense with respect to Counts II and III).

Accordingly, Counts II and III are dismissed due to Plaintiff's failure to exhaust his administrative remedies.

c. Count IV ("Retaliation in Violation of the First Amendment") Against Lt. Stevens

In Count IV, Plaintiff alleges that Lt. Stevens retaliated against him (in violation of the First Amendment) due to his filing of the original complaint (on October 6, 2023, very shortly before Lt. Stevens became Plaintiff's Case Manager). (Doc. No. 47 at ¶¶ 74-81, 51). Plaintiff further alleges that on February 29, 2024, he was moved from the Prison to West Tennessee State Penitentiary (and thus, it is clear, away from Lt. Stevens).

Defendants argue in effect that since Plaintiff's retaliation claim against Lt. Stevens stem from separate instances of alleged misconduct long post-dating the April 11, 2023 incident, Plaintiff needed to separately exhaust his retaliation claim. Count IV. (Doc. No. 52-1 at 14). The Court agrees, with the caveat that in lieu of showing exhaustion, Plaintiff could potentially show that the grievance process was unavailable to him. Defendants then assert that Plaintiff—despite knowing how to file a grievance, as evidenced by his prior filing of the April 21, 2023 grievance—did not do so. Plaintiff responds with contentions that the opaque nature of the retaliation (which was such that he was made aware of its occurrence only secondhand, from other persons) precluded his ability to file a grievance because "[t]he Prison requires firm facts, dates, and names for a grievance to be appropriate." (Doc. No. 53 at 7).

Defendants have replied by invoking two cases from within the Sixth Circuit, where a plaintiff's retaliation claim failed due to the plaintiff learning of the retaliation only from other sources rather than directly, thus (in the Court's view) reflecting inadequate factual matter to

plausibly support the elements of a claim of retaliation. (Doc. No. 56 at 4) (citing *Imburgia v. Cruz*, No. 1:11 CV 2823, 2012 WL 1035731 (N.D. Ohio Mar. 27, 2012), and *Cheatham v. Benson*, No. 2:16-CV-239, 2017 WL 5150788 (W.D. Mich. Nov. 7, 2017)). The Court cannot tell why Defendant raises these cases, but if the purpose is to argue that Plaintiff has failed to set forth adequate factual matter to state the claim in Count IV, the Court declines to consider such argument because it should have been raised earlier, in the memorandum (Doc. No. 52-1) in support of the Motion.

The Court does agree with Defendants that the contentions Plaintiff makes in his Response come from outside the operative complaint (or anything else that is properly considered along with the operative complaint). For these reasons, they cannot be considered. Raising them later, in a brief in opposition to a motion to dismiss, does not render them appropriate for consideration on a Rule 12(b)(6) motion to dismiss. As both sides seek to make hay based on these contentions, the Court will ignore them with respect to the arguments of *both* sides. Along the same lines, the information on which Defendants rely on for the proposition that Plaintiff did not file a grievance with respect to Lt. Stevens's alleged retaliation— the declaration filed (with exhibits thereto) at Docket No. 52-2 cannot be and will not be considered. This declaration, and the exhibits thereto, are simply not part of the Amended Complaint, not referred to in the Amended Complaint, and not central to the Amended Complaint. So the declaration cannot be considered. And the Amended Complaint nowhere indicates that Plaintiff did not grieve the alleged retaliation. And so on the instant Motion, for procedural reasons the Court is not free to ignore, the Court will not consider the alleged fact—which the Court realizes is not disputed by Plaintiff—that Plaintiff did not grieve the alleged retaliation.

With these contentions all properly disregarded, the question becomes much simpler: in light of the principles discussed above regarding dismissal for failure to exhaust based on a Rule 12(b)(6) motion, is dismissal of Count IV appropriate for failure to exhaust? The answer is no. Based on what the Court can consider on a Rule 12(b)(6) motion, the Court cannot say on the instant Motion that Plaintiff never exhausted his retaliation complaint—let alone say that any failure to exhaust that did occur is not excused due to the alleged unavailability of administrative (grievance) remedies. It conceivably could turn out that the Court can say these things later, but it cannot do so now.

Being unchallenged on any other basis, Count IV survives the instant Motion.

## IV. Failure to State a Claim Against Warden Mays

Alternatively, Defendants argue that, aside from concerns about Plaintiff's failure to exhaust the internal grievance process, Plaintiff has not stated a valid claim against Warden Mays in either Count II (Improper Policy Making) or Count III ("Supervisory Liability – Failure to Train/Supervise"). The Court need not address this argument, given the dismissal of Counts II and III for failure to exhaust administrative remedies.

<u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.** That is, it is GRANTED with respect to Counts II and III based on failure to exhaust administrative remedies, and DENIED with respect to Counts I and IV.

And for the reasons stated above, the Court has determined that Plaintiff has not implicated TDOC, or Defendant Mays in his official capacity, in any claims, and has dismissed all claims against Warden Mays in his individual capacity. Therefore, the Clerk is DIRECTED to terminate

both TDOC and Warden Mays as Defendants. And consistent with the first footnote herein, the Clerk is directed to terminate Steven White as a Defendant.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE