# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JERMAINE GIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:23-cv-01047 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| CHARLES STEVENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On December 8, 2025, the Court issued an order (Doc. No. 100) that granted Defendants'[1] "Motion for Evidentiary Hearing and Incorporated Memorandum of Law" (Doc. No. 97, "Motion for Hearing"). Specifically, in that order, the Court directed that "[a]n evidentiary hearing" would be held "on the issue of whether Plaintiff exhausted his administrative remedies." (*Id.*). Subsequently, Plaintiff, Jermaine Gibbs, filed his "Motion to Narrow the Scope of the Evidentiary Hearing And/Or To Exclude Certain Evidence And Witnesses From the Hearing" (Doc. No. 128, "Motion"). Via the Motion, Plaintiff argues that the defense of exhaustion of administrative remedies has been waived at least with respect to (purported) procedural defects in Plaintiff's grievance (Doc. No. 128-1, "Grievance"),[2] which Plaintiff brought complaining of the (alleged) use of excessive force against Plaintiff by TDOC correctional officers. (Doc. No. 128 at 5-6).

---

[1] As used herein, the term Defendants refers collectively to the non-terminated defendants in this action: Lieutenant Charles Stevens ("Stevens"), Captain Darrell Jones ("Jones"), Officer Madison Campbell ("Campbell"), Officer Dakota Taylor ("Taylor"), and Daniel Quevedo ("Quevedo").

The defendants who were dismissed from this action (i.e., terminated) and are not included within the term "Defendants" as used by the Court herein are: the Tennessee Department of Corrections ("TDOC"), Warden Tony Mays ("Mays"), and Officer Steven White ("White").

[2] A copy of Plaintiff's Grievance and at least some of the responses to the Grievance prepared by officials at TDOC was filed at Doc. No. 128-1.

Plaintiff further argues that certain (purportedly) untimely disclosed witnesses and evidence should be excluded under Fed. R. Civ. P. 37 from the evidentiary hearing. (Doc. No. 128 at 6-8). Defendants have filed a response (Doc. No. 131) in opposition to the Motion, and Plaintiff has filed a reply (Doc. No. 132) in further support of the Motion.

For the reasons described herein, the Motion (Doc. No. 128) is **DENIED** in its entirety.

BACKGROUND

In his amended complaint (Doc. No. 47), Plaintiff brought claims under 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution (as incorporated against the states by the Fourteenth Amendment) alleging violations of his civil rights by a group of TDOC correctional officers while he was incarcerated at Riverbend Maximum Security Prison. Specifically, Plaintiff brought the following claims against the specified Defendants, respectively: (1) "Use of Unnecessary and Excessive Force" against Stevens, Jones, Campbell, Taylor and Quevedo ("Count I"); (2) Improper Policy Making[3] against Mays ("Count II"); (3) "Supervisory Liability - Failure to Train/Supervise" against Mays ("Count III"); and (4) "Retaliation in Violation of the First Amendment" against Stevens ("Count IV"). (Doc. No. 47 at ¶¶ 59-81). The Court ultimately dismissed Counts II and III but permitted Counts I and IV to proceed. (Doc. Nos. 94, 95). Importantly for the instant Motion, it appears that although Plaintiff *did* file a grievance (Doc. No. 128-1, "Grievance") with respect to the alleged excessive force that forms the basis of his claim in Count I, Plaintiff *did not* file a grievance with respect to the alleged retaliatory events that form the basis of Count IV. (Doc. No. 52-2; Doc. No. 94 at 21).

---

[3] Plaintiff does not title Count II in this particular way, i.e., Plaintiff does not title Count II as a claim based on "Improper Policy Making." The Court has applied this descriptive title for convenience and clarity based on the specific allegations present in the amended complaint. (*See* Doc. No. 47 at ¶¶ 63-68).

After the Court dismissed Counts II and III, Defendants filed the Motion for Hearing, therein seeking an evidentiary hearing for the Court to resolve the issue of whether Plaintiff had exhausted his administrative remedies in the TDOC grievance process and thereby determine whether Plaintiff's surviving claims are foreclosed by the Prison Litigation Reform Act ("PLRA").[4] (Doc. No. 97 at 1-2). As noted above, the Court granted the Motion for Hearing, directing that "[a]n evidentiary hearing" be held "on the issue of whether Plaintiff exhausted his administrative remedies." (Doc. No. 100). The evidentiary hearing was first set for January 7, 2026 (Doc. No. 100), and then reset for January 28, 2026 (Doc. No. 112), for March 18, 2026 (Doc. No. 126), and for August 7, 2026 (Doc. No. 130), which is the date that the hearing is currently set.

On February 27, 2026, when the evidentiary hearing was still set for March 18, 2026, Plaintiff filed the instant Motion, therein contending that (1) the defense of exhaustion of administrative remedies has been waived at least with respect to (purported) procedural defects in Plaintiff's Grievance (which complained of the use of (alleged) excessive force by TDOC staff); and (2) certain (purportedly) late disclosed witnesses and evidence should be excluded under Fed. R. Civ. P. 37 from the evidentiary hearing. The Court will address each of these arguments below.

DISCUSSION

1. Exhaustion of Administrative Remedies and Waiver

The Court will first note for the sake of clarity the exact contours of the argument raised in Plaintiff's Motion regarding waiver of the defense of administrative exhaustion. Although

---

[4] Plaintiff is an inmate who was formerly incarcerated at Riverbend Maximum Security Prison. (Doc. No. 47 at ¶ 1; Doc. No. 94 at 2). Given these circumstances, it is relevant to this action (and the instant Motion) that the PLRA requires that "[n]o action shall be brought . . . [by an inmate] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, the "exhaustion requirement will be excused[ ] if the grievance system is unavailable to the prisoner." *Johnson v. Barney*, No. 24-3287, 2025 WL 252847, at *2 (6th Cir. Jan. 17, 2025).

unfortunately Plaintiff is not clear on this point, he seems to argue that the defense of administrative exhaustion is waived as to Count I—a claim arising out of (alleged) use of excessive force by TDOC officers as to which Plaintiff *did* file a grievance (i.e., the Grievance). According to Plaintiff, this (alleged) waiver occurred because TDOC (Defendants' employer) "ordered the [G]rievance be addressed on the merits." (Doc. No. 128 at 6). So, Plaintiff contends that the evidentiary hearing in this action should be limited solely to examining administrative exhaustion as it relates to Count IV, a claim of retaliation as to which Plaintiff seemingly did *not* file a grievance.[5] With that said, the Court will now review the PLRA's requirements for administrative exhaustion and case law relevant to the parties' arguments as to waiver.

As noted in a footnote above, the PLRA requires that "[n]o action shall be brought . . . [by an inmate (such as Plaintiff)] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "exhaustion requirement will be excused[ ] if the grievance system is unavailable to the prisoner." *Johnson v. Barney*, No. 24-3287, 2025 WL 252847, at *2 (6th Cir. Jan. 17, 2025). Importantly, the filing of an "untimely or otherwise procedurally defective" grievance does not suffice to exhaust administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2019). Instead, to properly exhaust administrative remedies, an inmate must use "all steps that the agency holds out, and do[] so *properly*[.]" *Id.* at 90. With that said, "prison officials waive [the defense of lack of administrative exhaustion that is based on] procedural irregularities in a grievance when they nonetheless address the grievance on the merits." *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)). However, these principles (from *Woodford* and *Mattox*) regarding waiver of the defense of

---

[5] Indeed, Plaintiff explicitly notes that the Court should "should narrow the hearing to only whether Plaintiff appropriately grieved the retaliatory conduct of Lt. Stevens." (Doc. No. 128 at 6). That is to say, Plaintiff desires the evidentiary hearing be limited solely to whether Plaintiff exhausted his administrative remedies as to Count IV (i.e., his claim for retaliation against Stevens).

administrative exhaustion comes with a caveat. Namely, for a defense of administrative exhaustion *based on procedural deficiencies in a prison grievance* to be waived by a merits-based response to the grievance—a prisoner must have received a merits-based response to the grievance at "'each step'" of the grievance process. *Lee v. Willey*, 789 F.3d 673, 681 (6th Cir. 2015) (quoting *Cook v. Caruso*, 531 F. App'x 554, 562–63 (6th Cir. 2013)). However, this caveat comes with its own caveat, namely that some case law suggests that if prison officials "shift their rationale in denying a grievance from a purely merit-based determination to a procedural defect," then any objection to the procedural defect has been waived, "thus exhausting the claim for purposes of federal suit." *Raper v. Controneo*, No. 1:17-CV-368, 2018 WL 2928188, at *2 (W.D. Mich. June 12, 2018) (citing *Alexander v.* Huss, No. 2:16-cv-209, 2017 WL 4119944 (W.D. Mich. Sept. 18, 2017)).[6]

 With that review provided, the Court will now turn to evaluating the parties' arguments on waiver of the defense of administrative exhaustion. As noted above, Plaintiff argues that the defense of administrative exhaustion is waived as to Count I—which involves allegations of excessive force about which Plaintiff *did* file a grievance (i.e., the Grievance (Doc. No. 128-1)). Plaintiff so argues because (according to Plaintiff), after the Grievance had been denied for procedural defects—namely for being untimely—at the first two steps of the grievance process, TDOC Deputy Assistant Commissioner Kevin Genovese ("Genovese") at the final (third) step of the TDOC grievance process, ordered "the [prison] supervisor [to] respond to the allegations of staff assault" (Doc. No. 128-1 at 7) made by Plaintiff in the Grievance. (Doc. No. 128 at 5-6). So, according to Plaintiff, because "TDOC[, through Genovese,] ordered the grievance be addressed

---

[6] Notably, this proposition has been stated in contexts where the denial of a grievance for a procedural defect has taken place *for the first time* at the "final step in the grievance process" after prison officials previously addressed the grievance on the merits, *Raper*, 2018 WL 2928188, at *2, rather than where a grievance was *previously* denied on the basis of a procedural defect and then at the final step of the procedural process the grievance was subsequently addressed on the merits.

on the merits," Defendants have waived any defense regarding Plaintiff's failure to exhaust administrative remedies based on the Grievance's procedural deficiencies. (*Id.* at 6). Defendants disagree, contending that Plaintiff's "[G]rievance was denied because of the procedural defect – it was filed late." (Doc. No. 131 at 2). Specifically, Defendants argue that "Plaintiff did not receive a merit-based response at each level of the grievance process," because Plaintiff's Grievance was denied for being untimely at the first two steps of the grievance process. (*Id.* at 2). Defendant further argues that at the final (third) step of the grievance process, Genovese ordering "the [prison] supervisor [to] respond to the allegations of staff assault," (Doc. No. 128-1 at 7), was not actually the "final Step III decision" on the Grievance. (Doc. No. 131 at 2). Instead, according to Defendants, the final decision at the third step of the grievance process was made by Assistant Commissioner of Prison Operations Linda Thomas ("Thomas"), who (again according to Defendants) denied the Grievance, seemingly, at least in part, on the grounds that the Grievance was untimely. (Doc. No. 131 at 2).

Ultimately, the briefing on the Motion shows that there is a dispute between the parties as to whether the defense of administrative exhaustion has been waived. And based on the filings and the record before it, the Court does not believe that it can resolve this dispute without a hearing. Particularly, it appears uncertain not just *who*—as between Genovese and Thomas—made the final decision to deny Plaintiff's Grievance at the third and final step of the grievance process, but also (and more importantly) whether the decision denying Plaintiff's Grievance at the third and final step of the grievance process was based on the untimeliness of the Grievance, on the merits of the Grievance, or some combination of the merits and untimeliness of the Grievance. In other words, at this juncture, and without first holding the evidentiary hearing scheduled in this matter, the Court is unable to determine accurately the extent to which there was a merits-based determination (in

whole or in part) on the Grievance at *any* stage of the TDOC grievance process so as to be able to adequately evaluate the issue of waiver consistent with the caselaw discussed earlier herein.[7]

The upshot is that although it might ultimately emerge that there *has* been waiver of the defense of failure to exhaust administrative remedies based on the Grievance's procedural deficiencies, this is not a determination that the Court can make at this juncture. And ultimately, the issue of whether this defense has been waived (as to Count I) is exactly the sort of issue that can better be resolved (and *will* be resolved) after an evidentiary hearing. Accordingly, Plaintiff's request to limit the evidentiary hearing to an examination of exhaustion as it relates to Plaintiff's allegations of retaliation in Count IV is **DENIED**. Given the particular nature of the request that is thus being denied, this denial is without prejudice to Plaintiff again raising the issue of waiver of the defense of failure to exhaust administrative remedies based on the Grievance's procedural deficiencies once the factual record has been further developed at the evidentiary hearing.

2. Exclusion under Fed. R. Civ. P. 37

That takes the Court to Plaintiff's second type of requested relief: the exclusion of certain evidence and witnesses that Defendants disclosed in December 2025 (the "At-Issue Evidence and Witnesses"). In particular, Plaintiff argues "that any new testimony category, witness, or evidence provided or identified in either of the December 2025 Rule 26(e) disclosure supplementations

---

[7] Notably, although Defendants assert that "Assistant Commissioner of Prison Operations Linda Thomas made the final Step III decision concurring with the Step I and Step II responses that the grievance be denied as untimely," (Doc. No. 131 at 2), this assertion is made without citation to the record, and a review of the copy of Plaintiff's Grievance at Docket No. 128-1 does not make clear who made the final decision denying that Grievance or what the basis of that denial was.

Conceivably, a copy of Thomas's decision on the Grievance is buried somewhere in the record in this action, but the Court will not rifle through the record to find this decision given that the parties have not clearly identified it for the Court in the briefing on the instant Motion. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

should be excluded" under Rule 37(c)(1). (Doc. No. 128 at 8).[8] Although his argument is somewhat difficult to follow, Plaintiff seems to contend that the At-Issue Evidence and Witnesses—which includes in particular certain recordings of phone calls between Plaintiff and Plaintiff's counsel—were untimely disclosed by Defendants via the At-Issue Disclosures, and as such the At-Issue Evidence and Witnesses are subject to exclusion under Rule 37(c)(1). By contrast, Defendants argue that the At-Issue Evidence and Witnesses *were* timely disclosed and that even if such disclosure was untimely in violation of Rule 26, such violation was harmless so as to preclude exclusion of the At-Issue Evidence and Witnesses. (Doc. No. 131 at 2-6).

As the parties correctly note, Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37 govern the inquiry into whether the At-Issue Evidence and Witnesses should be excluded. The Court understands that the disclosure of the At-Issue Evidence and Witnesses constitutes a discovery supplementation as required under Rule 26(e), which provides in pertinent part:

> (1) *In General*. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response:
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1).

Rule 37(c) in pertinent part governs violations of Rule 26(e) (and of Rule 26(a)). It provides:

> (1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

---

[8] Copies of Defendants' supplemental disclosures are filed at Docket No. 128-4 and Docket No. 128-5. The Court will refer to these supplemental disclosures collectively as the At-Issue Disclosures.

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c)(1).

The upshot is that the Court must conduct a three-step analysis. The Court first must determine whether the disclosure of the At-Issue Evidence and Witnesses constitutes an untimely supplementation under Fed. R. Civ. P. 26(e), and, if so, then must analyze whether that failure to timely supplement was substantially justified or harmless under Fed. R. Civ. P. 37(c)(1). If the failure (if any) to timely supplement was neither substantially justified nor harmless, then the Court may impose sanctions under Fed. R. Civ. P. 37(c)(1). Here, the Court will assume *arguendo* that Defendants' supplementation (i.e., disclosure of the At-Issue Evidence and Witnesses via the At-Issue Disclosures) was untimely under Fed. R. Civ. P. 26(e). But the Court concludes that the (assumed) untimeliness was substantially justified or harmless and thus not grounds for sanctions against Defendants.

As the parties correctly acknowledge, courts in the Sixth Circuit generally consider five factors ("*Howe* factors") to determine whether a failure to comply with Fed. R. Civ. P. 26 (such as the Court is assuming occurred here with Plaintiff's assumedly untimely disclosure of the At-Issue Evidence and Witnesses) was substantially justified or harmless:

(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).[9] Here, considering the *Howe* factors, the (assumed) failure to timely disclose the At-Issue Evidence and Witnesses is substantially justified or harmless, so the Court will not prohibit Defendants from introducing or using the At-Issue Evidence and Witnesses at the evidentiary hearing based on their (assumed) untimely disclosure.

The Court (naturally) will first address the first *Howe* factor, which is "the surprise to the party against whom the evidence would be offered." *Howe*, 801 F.3d at 748. The Court discerns— and the parties do not dispute—that at least at the time the At-Issue Evidence and Witnesses were disclosed, Plaintiff was surprised and had no notice that Defendants were intending to use the At-Issue Evidence and Witnesses at the evidentiary hearing (of course that is not to say that Plaintiff was not aware on some level of the *existence* of portions or the entirety of the At-Issue Evidence and Witnesses). Thus, this factor weighs in favor of finding that the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses was not substantially justified or harmless.

Turning to the second *Howe* factor, "the ability of that party [against whom the evidence is offered] to cure the surprise," the Court finds that this factor weighs in favor of finding that the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses *was* substantially justified or harmless. *Howe*, 801 F.3d at 748. Since the At-Issue Evidence and Witnesses were disclosed (via the At-Issue Disclosures) in December 2025, the scheduled evidentiary hearing in

---

[9] Notably, the language of Rule 37(c)(1) indicates plainly that for a party to avoid sanctions for an untimely disclosure of information, the untimeliness need be only either substantially justified *or, alternatively*, harmless. However, in adopting the *Howe* factors, the Sixth Circuit appeared to have erased any distinction between harmlessness and substantial justification. *Howe*, 801 F.3d at 747-48 (noting that "[i]n order to assess whether a party's omitted or late disclosure is 'substantially justified' or 'harmless'" the court would consider the *Howe* factors). The Court will follow the Sixth Circuit here and will apply the *Howe* factors to consider whether the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses was substantially justified or harmless, without making a distinction between "harmlessness" or "substantial justification."

this action has been moved from January 7, 2026 (Doc. No. 100) to August 7, 2026 (Doc. No. 130). Thus, although Plaintiff argues that the timing of the disclosure of the At-Issue Evidence and Witnesses has given him "no mechanism to depose the newly disclosed witnesses, [issue relevant subpoenas], or conduct any discovery that might arise from the disclosure," (Doc. No. 132 at 5), the moving of the scheduled evidentiary hearing in this action has obviated this concern. In particular, on this point the Court notes that to the extent Plaintiff complains about a lack of "mechanism[s]" "to depose the newly disclosed witnesses, [issue relevant subpoenas], or conduct any discovery that might arise from the disclosure," (Doc. No. 132 at 5), that complaint is without merit; given the postponements of the evidentiary hearing in this matter, Plaintiff *does* have (and has had) such a mechanism, namely the option of moving the Court to reopen discovery for the limited purpose of conducting discovery regarding the At-Issue Evidence and Witnesses disclosed via the At-Issue Disclosures.

Furthermore, although Plaintiff appears to argue (albeit not explicitly) that the surprise visited on Plaintiff as a result of the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses is incurable because discovery in this action has closed, (Doc. No. 132 at 5), this argument is unavailing for two reasons. First, Plaintiff has not properly moved to reopen discovery prior to or in connection with the filing of the Motion, as Plaintiff could have done in the alternative to seeking exclusion of the At-Issue Evidence and Witnesses. Second, Plaintiff has not indicated in the briefing on the Motion that he has attempted to contact Defendants or take any other steps to affirmatively respond or develop discovery in response to the At-Issue Disclosures by discussing this matter with Defendants. In other words, Plaintiff would have this Court embark on the drastic course of prohibiting the admission of the At-Issue Evidence and Witnesses, *see Mullen v. Perry Mfg. Co.*, 921 F.2d 276 (6th Cir. 1990) (noting that "the exclusion of evidence is

a drastic sanction" (quoting *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 766 (6th Cir. 1985))); *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019*)* (noting that exclusion is a "harsh remedy"), without Plaintiff having either requested less drastic remedies to cure whatever surprise occurred as a result of the (assumed) untimeliness of the At-Issue Disclosures or otherwise taken any steps of his own to mitigate the effects of that surprise. The Court is loath to embark on such a course. Accordingly, this factor weighs in favor of finding that the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses was substantially justified or harmless.

Turning to the third *Howe* factor, "the extent to which allowing the evidence would disrupt the [evidentiary hearing]," *Howe,* 801 F.3d at 748, the briefing on the Motion nowhere indicates (and the Court does not discern on its own) that permitting the introduction of the At-Issue Evidence and Witnesses would somehow disrupt the evidentiary hearing. Therefore, this factor weighs in favor of finding that the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses was substantially justified or harmless.

Turning to the fourth *Howe* factor, "the importance of the evidence," *Howe,* 801 F.3d at 748, the parties disagree as to the importance of the At-Issue Evidence and Witnesses, with Defendants arguing that at least the recordings of phone calls between Plaintiff and Plaintiff's counsel are "important," (Doc. No. 131 at 4) and Plaintiff contending broadly that the "evidence" (potentially including the witnesses) embodied in the At-Issue Evidence and Witnesses is "hardly dispositive." (Doc. No. 132 at 6).[10] The Sixth Circuit has noted that the fourth *Howe* factor "can cut both ways" in that "'[t]he more important the proof, the greater the effect of preclusion [i.e.,

---

[10] The Court observes that if the At-Issue Evidence and Witnesses are truly "hardly dispositive" as Plaintiff argues, (Doc. No. 132 at 6), perhaps Plaintiff will not in fact be prejudiced by the introduction of the At-Issue Evidence and Witnesses at the evidentiary hearing.

the more the tardy party would be harmed by exclusion (and, relatedly, the more important that such evidence be disclosed timely)], but also the greater the harm [to the party seeking exclusion] in tardy disclosure.'" *Bisig*, 940 F.3d at 220 (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at \*5 (E.D. Ky. May 25, 2017)). Ultimately because (1) the Sixth Circuit has noted this factor "can cut both ways," (2) the parties dispute the importance of the At-Issue Evidence and Witnesses, and (3) the Court cannot conclude at this juncture either way how important the At-Issue Evidence and Witnesses will be, the Court will treat this factor as neutral.

Finally, turning to the fifth *Howe* factor, "the nondisclosing party's explanation for its failure to disclose the evidence," *Howe,* 801 F.3d at 748, the Court finds that this factor weighs in favor of finding that the (assumed) untimeliness of the At-Issue Disclosures was substantially justified or harmless. At least with respect to the recordings of phone calls between Plaintiff and Plaintiff's counsel that were disclosed in the At-Issue Disclosures, Defendants assert that the disclosure was not made earlier because—among other things—Defendants' counsel did not know these recordings existed prior to disclosure. (Doc. No. 131 at 4). Although Plaintiff disputes this explanation, (Doc. No. 132 at 6), the Court finds that Defendants' explanation is credible. Further, although Defendants do not seem to offer an explanation for the (assumed) failure to timely disclose the At-Issue Evidence and Witnesses, the Court declines to take issue with this lack of explanation, given that Plaintiff does not take issue himself with this lack of explanation. Accordingly, the Court finds that this factor weighs in favor of finding that the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses was substantially justified or harmless.

Thus, the Court has concluded that only one of the five *Howe* factors supports finding that the (assumed) untimeliness of the disclosure of the At-Issue Evidence and Witnesses was not substantially justified or harmless. Therefore, the Court will not prohibit Defendants from introducing at the evidentiary hearing the At-Issue Evidence and Witnesses due to any (assumed) untimeliness of their disclosure.[11]

CONCLUSION

Accordingly, the Motion (Doc. No. 128) is **DENIED** in its entirety.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] To the extent that Plaintiff requests that certain evidence regarding Plaintiff's character should be excluded under Fed. R. Evid. 404(a) or (b), (Doc. No. 128 at 8), this request is not yet ripe, and so the Court declines at this juncture to rule on any motion seeking to exclude evidence on these grounds. Such declination is without prejudice to Plaintiff objecting at the evidentiary hearing to any evidence (such as testimony) that he contends should be excluded under Fed. R. Evid. 404(a) or (b) or indeed should be excluded under any other provision of the Federal Rules of Evidence.